UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HERLINDA C.,[1] | Case No. 2:19-cv-07515-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Herlinda C. ("Plaintiff") filed a Complaint on August 29, 2019, seeking review of the denial of her application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on May 14, 2020. The matter is now ready for decision.

/ / /

/ / /

---

[1] Plaintiff's name has been partially redacted under Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

Plaintiff protectively filed her application for DIB on April 21, 2016, alleging disability commencing on February 10, 2015, and later amended that date to February 10, 2016. AR 27, 172, 177. On July 10, 2018, after her application was denied initially and on reconsideration (AR 87-90, 92-97), Plaintiff, represented by counsel, provided brief testimony before an Administrative Law Judge ("ALJ"), as did medical expert Dr. Robert Sklaroff and a vocational expert ("VE"). AR 42-61.

On August 2, 2018, the ALJ issued a written decision concluding Plaintiff was not disabled. AR 27-33. The ALJ found Plaintiff met the insured-status requirements of the Social Security Act ("SSA") until December 31, 2020, and had engaged in substantial gainful activity up until February 10, 2016, the amended alleged onset date. AR 29. The ALJ found that Plaintiff's history of breast cancer was a "medically determinable impairment." AR 30. However, the ALJ found the impairment, or a combination of Plaintiff's impairments, was not severe because it did not significantly limit her ability to work for 12 consecutive months. AR 31-33. Accordingly, the ALJ terminated the sequential analysis, and found Plaintiff was not under a "disability" as defined in the SSA, from February 10, 2016, through the date of the decision. AR 33. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 13-18.

# II.
# LEGAL STANDARDS

A. **Standard of Review**

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on

2

the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). However, a court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine if the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's residual functional capacity ("RFC"), that is, what the claimant can do on a sustained basis despite the limitations from impairments. See 20 C.F.R. § 404.1520(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the

next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110; However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 3):

Issue No. 1: Whether the ALJ properly evaluated Plaintiff's impairments at Step Two of the sequential evaluation; and

Issue No. 2: Whether the ALJ properly evaluated Plaintiff's subjective complaints

**A.     Non-Severity of Impairments**

In Issue No. 1, Plaintiff contends the ALJ improperly concluded that she did not have a severe impairment by erroneously relying on the opinion of Dr. Skarloff while overlooking the State agency determinations, and improperly assessing the medical evidence. Jt. Stip. at 2-9, 17-22.

1. Applicable Law

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). At this step, the claimant has the burden to show that he or she has one or more "severe" medically determinable impairments that can be expected to result in death or last for a continuous period of at least twelve months. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003). To establish that a medically determinable impairment is "severe," the claimant must show that it "significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

"An impairment or combination of impairments may be found not severe 'only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal citation omitted) (emphasis in original).

Further, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when [her] conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687 (internal citation omitted). Thus, applying the applicable standard of review to the requirements of Step Two, a court must determine whether an ALJ had substantial evidence to find the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. See id. at 688 (requiring analysis beyond Step Two where there was not a "total absence of objective evidence" of a severe impairment).

When the ALJ finds any of a claimant's impairments to be severe, the ALJ continues with the sequential analysis, considering the effect of all the claimant's impairments, whether or not severe. SSR 96-8p, 1996 WL 374184, *5; Terri E. v. Comm'r Soc. Sec., 2020 WL 774361, at *4 (D. Or. Feb. 18, 2020). Reversible error occurs only when a severe impairment erroneously excluded at Step Two causes additional functional limitation not accounted for in the RFC assessment. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). "An overly stringent application of the severity requirement . . . violates the [SSA] by denying benefits to claimants who do meet the statutory definition of disabled." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

2. Analysis

      i.    Medically Determinable Impairment

Here, in the first part of the ALJ's Step Two screening determination, the ALJ found Plaintiff's history of breast cancer was a medically determinable impairment. AR 30. The ALJ also considered Plaintiff's related right-side body

pain, including to her back, arm, leg, shoulder/shoulder blades, and hand joints, as well as Plaintiff's condition in the "mental realm." AR 30. The ALJ did not find any of these additional impairments "medically determinable." AR 30. While Plaintiff presents argues that the impairments associated with her joint pain are medically determinable (Jt. Stip. 5, 7-8, 18-19), the Court need not address those additional issues to resolve this appeal as the ALJ reached the first part of the Step-Two determination in Plaintiff's favor.

          ii.     <u>Durational Requirement</u>

In the ALJ's second finding at Step Two, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months." AR 31.

In making that determination, the ALJ gave the opinion of Dr. Skarloff "great weight." AR 31. The ALJ noted the doctor's testimony that, while Plaintiff "appeared" to have periodic chemotherapy treatments for slightly more than the 12-month durational requirement, Plaintiff had at times complained of only mild symptoms. AR 31. Thus, the ALJ stated, although Plaintiff's treatment might serve as a reasonable basis for the Plaintiff's symptoms through the end of the chemotherapy, "the cumulative evidence does not establish a severe impairment." AR 31.

The ALJ then reiterated that alleged onset date was February 10, 2016, and discussed Plaintiff's previous history with breast cancer to assist in understanding the claim. AR 32. The ALJ's summary included a discussion of Plaintiff's metastatic carcinoma of the bilateral breasts beginning in 2011, a year of chemotherapy, and courses of radiation and hormone therapy. AR 32. The ALJ noted that later, in November 2015, magnetic resonance imaging ("MRI") revealed bilateral breast abnormalities despite a negative mammogram. AR 32. A subsequent abnormal ultrasound prompted a biopsy in 2016, which led to a

February 18, 2016 bilateral mastectomy, frequent chemotherapy from April 8, to May 20, 2016; June 12, 2016 to August 30, 2016, and then "starting again on September 6, 2016 – but only every three months." AR 32. The ALJ also noted Plaintiff started hormonal therapy in September 2016, but no radiation therapy, and then had breast reconstruction surgery in July 2017. AR 31. The ALJ related how Plaintiff "did well" on chemotherapy and that there were minimal complaints in the treatment notes. AR 32.

The ALJ also stated that, in April 2017, Plaintiff complained of worsening symptoms over the previous two months, "but based on Dr. Skarloff's testimony and the cumulative evidence, this is not readily explained." AR 32. The ALJ added that "medical entries in 2016 specifically related 'no progression of the disease[']] [citing AR 760] and, based on [a] May 2017 study, 'No convincing PET[2] evidence for active or recurrent disease.' [citing AR 1766]." AR 33.

The ALJ found, "[i]n sum," that "the cumulative evidence supported Dr. Skarloff's opinion that Plaintiff did not have a severe impairment, "at least on a durational basis," and reiterated that she afforded his opinion "great weight." AR 33. Finally, the ALJ mentioned that one of Plaintiff's physicians extended her "off work" status to January 31, 2017, and that date was "less than 12 [moths] after [the] February 10, 2016 [alleged onset date]." AR 33.

The ALJ's determination on this issue at step two of the sequential evaluation is insufficient for at least three reasons.

First, the ALJ relied primarily on Dr. Skarloff's opinion that Plaintiff's

---

[2] "A breast positron emission tomography (PET) scan is an imaging test that uses a radioactive substance (called a tracer) to look for breast cancer. This tracer can help identify areas of cancer that an MRI or CT scan may miss." See MedlinePlus, https://medlineplus.gov/ency/article/007469.htm (last visited June 18, 2020).

impairment was not severe, but she failed to discuss the other relevant severity findings in the record. State agency medical consultants Dr. L. Naiman and Dr. F. Kalmar both found Plaintiff's malignant neoplasm of the breast to be Plaintiff's "[p]rimary" medical determinable impairment, and that it was "[s]evere." AR 66, 67. Under Social Security Rule 96-6p[3], State agency findings "regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources." SSR 96-6p, 1996 WL 374180, at *1; Brown v. Berryhill, 2018 WL 6169342, at *3-4 (E.D. Cal. Nov. 26, 2018). ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions." Id. Here, the ALJ made no mention of the severity findings.[4] Accordingly, this created at least a debatable conflict in the opinion evidence that warranted at a minimum further analysis. See, e.g., Aaron v. Saul, 2019 WL 4644837, at *10-11 (N.D. Cal. Sept. 24, 2019) (ALJ erred by offering no reason for rejecting opinions of State agency doctors who reviewed the record and found claimant had a severe impairment); Franklin v. Astrue, 2012 WL 3059407, at *3 (W.D. Wash. July 25, 2012) (differing interpretations between doctor and State agency physicians regarding

---

[3] Although SSR 96-6p was rescinded and replaced by SSR 17-2p on March 27, 2017, SSR 96-6p applies because Plaintiff's claim was filed before that date. See 2017 WL 3928306; Wilkins v. Berryhill, 2018 WL 4604014, at *9 n.7 (D. Idaho Sept. 25, 2018); Sanchez v. Berryhill, 2017 WL 5508515, at *3 n.4 (C.D. Cal. Nov. 16, 2017).

[4] At the end of the decision, the ALJ stated she afforded "no to minimal weight" to the State agency assessments that Plaintiff was restricted to a modified range of light work because they were "based on their projection of anticipated capacity" and "the actual history does not support the projected functional limitations." AR 33 (citing AR 62-71, 82-83). As the ALJ never proceeded through the sequential evaluation to assess Plaintiff's functional limitations in an RFC, it is unclear why weight is or is not accorded to assessed State agency functional assessments. Regardless, this finding does not purport to relate to or address the State agency doctors' severity determinations at Step Two.

severity of impairment showed that the "claim is at least debatable . . . [and] should thus proceed beyond step two"); Stone v. Astrue, 2010 WL 5510092, at *10 (W.D. Wash. Nov. 26, 2010) (remanding where ALJ erred by failing to provide proper reasons for rejecting State agency medical consultants' opinions that claimant's mental impairments were severe).

Second, in looking to the one-year period following the alleged-onset date—February 10, 2016 to February 10, 2017—that could serve to suffice the 12-month durational requirement, the ALJ acknowledged Plaintiff had her mastectomy and then "frequent chemotherapy" to August 30, 2016, but cites a September 6, 2016 progress noted indicating there was "no progression of disease." AR 32 (citing AR 760). However, as Plaintiff notes and Defendant does not refute, that notation appears to refer to an ovarian cyst, not Plaintiff's breast cancer. Jt. Stip. at 7; AR 760. Further complicating the matter is Defendant's contention that the ALJ's citation "should have been" to a July 2016 progress note at AR 1010 (Jt. Stip. at 13 n.6), but that citation is to a different exhibit altogether (Exhibit 4, instead of Exhibit 3 relied on by the ALJ) and it is also unclear in that note whether the reference is to Plaintiff's ovarian cyst or her breast cancer. See AR 1010. While the next piece of evidence relied upon by the ALJ is a record that indicated "[n]o convincing PET evidence for active or recurrent disease," that PET scan occurred in May 2017, well beyond the February 2017 date Plaintiff needed to reach to establish the 12-month durational requirement. AR 33, 1766. Accordingly, because these citations to the medical record by the ALJ, which the Court is constrained to review, do not "clearly establish" the ALJ's conclusion, they cannot support the Step-Two finding. See Orn, 495 F.3d at 630; Webb, 433 F.3d at 686-87; Franklin, 2012 WL 3059407 at *3.

Third, and finally, the ALJ offered as further evidence Plaintiff's physician's extension of her "off work" status to only January 31, 2017—just 10

days shy of the 12-month requirement. AR 33. However, this conflates the Step-Two determination with findings required later in the sequential evaluation and heightens the burden Plaintiff needed to meet. Plaintiff was not required, at this step, to show a doctor advised her not to work for the entire period, or that she was precluded from all work activity. Indeed, she was not required to prove disability at this early stage. She was only required to show that her determinable impairment could be expected to result in death or last for at least the twelve-month durational period. See Yuckert, 482 U.S. at 146 n.5; Celaya, 332 F.3d at 1180.

The record demonstrates extensive, non-conservative treatment for Plaintiff's second bout of cancer from February 2016 to at least June 2017. See, e.g., AR 1354 (progress note summarizing treatment history). Plaintiff also points to over sixty treatment and office visits from February 2016 and November 2017. Jt. Stip. at 8, 21; AR 247, 252, 256-58, 262, 266, 268, 270-71, 275, 279, 280-83, 295, 298, 305, 482, 517, 531, 623, 661, 679, 687, 701, 711, 725, 742, 754, 756, 773, 780, 788, 802, 805, 823, 1206, 1227, 1254, 1260, 1268, 1286, 1309, 1317, 1330, 1341, 1349, 1353, 1376, 1381, 1418, 1957, 1981, 2023, 2034, 2070, 2093-95, 2097-99, 2100-01. This record does not reflect a "total absence of objective evidence," and appears sufficient to meet the de minimis threshold such that Plaintiff's claim cannot be considered "groundless." See Webb, 433 F.3d at 687; Smolen, 80 F.3d at 1290.

**B.     Remand is appropriate.**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where further proceedings would serve no useful purpose or where the record has been fully developed, a court may direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for

further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the claimant is disabled. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes remand for further proceedings is warranted. Because the ALJ terminated the analysis at Step Two, and no RFC was formulated, the Court cannot determine whether a severe impairment would have resulted in functional limitations demonstrating disability or at least not accounted for by the RFC. See, e.g., Lewis, 498 F.3d at 911. Accordingly, the Court finds further proceedings are warranted. Webb, 433 F.3d at 687; Corrao, 20 F.3d at 949; Aaron, 2019 WL 4644837 at *11 (failure to properly find severe impairment at Step Two resulted in prejudice because ALJ did not proceed beyond that step, resulting in denial of DIB application); Franklin, 2012 WL 3059407 at *3. Because it is unclear whether Plaintiff was in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16.

The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, including whether Plaintiff has any or has additional medically determinable and severe impairments, before the ALJ.

Accordingly, on remand, the ALJ shall reassess Step Two of the disability analysis in light of this Order and, if warranted, proceed to Step Three, and then the remaining steps, if warranted, to resolve Plaintiff's claim of disability.

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS

ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: June 19, 2020

_____
JOHN D. EARLY
United States Magistrate Judge